ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

EVAN M. MATEER (CABN 326848)
Assistant United States Attorney

   1301 Clay Street, Suite 340S
   Oakland, California 94612
   Telephone: (510) 637-3680
   FAX: (510) 637-3724
   Email: evan.mateer@usdoj.gov

Attorney for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>v.<br><br>MELISSA LUCILLE CIBRIAN,<br><br>   Defendant. | **CASE NO. 3:21-cr-406-WHO**<br><br>**GOVERNMENT'S SENTENCING MEMORANDUM**<br><br>Court: Judge William H. Orrick<br>Date: January 25, 2024<br>Time: 1:30 p.m. |

## I.     INTRODUCTION

On January 27, 2022, Defendant Melissa Cibrian plead guilty to one count of bank fraud in violation of 18 U.S.C. § 1344.  The plea was made in accordance with an agreement with the government, in which the government agreed to recommend as a sentence a term of probation.  After entering her guilty plea, however, Ms. Cibrian began seriously struggling with her pre-trial supervision.  Ultimately, in March 2022, Ms. Cibrian absconded, and here whereabouts were unknown until she was arrested on September 15, 2023.  Ms. Cibrian has been in custody since that date and is set for sentencing on January 25, 2024.  Considering the §3553 factors, including Ms. Cibrian background and the nature of the offense, the government recommends a sentence of time served followed by a 3-year term of supervised release.

## II.    OFFENSE CONDUCT AND BACKGROUND

On January 24, 2020, a produce business called the Washington Vegetable Company mailed 26 checks to its suppliers by dropping the payment envelopes in a blue collection box near Bernal Heights in San Francisco.  Presentence Investigation Report (PSR) ¶16.  Within a few days, fraudsters had stolen the checks from the mail, removed the names of the original payees, replaced them with their own name, and cashed the checks at various bank branches around San Francisco and the East Bay.  *Id.* ¶17.  Ms. Cibrian was one of those fraudsters.  On January 27, 2020, Ms. Cibrian cashed one of the stolen checks at a Bank of America branch in San Francisco.  *Id.* ¶18.  The check was from Washington Vegetable Company and was worth $3,046.84, made payable to a company called M&M Farms Inc.  *Id.*  Ms. Cibrian repeated this scheme several days later, when she cashed a check worth $6,081.20 that had originally been written to a company called Mark Produce Sales.  *Id.* ¶19.

On January 25, 2021, Ms. Cibrian was charged by complaint with bank fraud in violation of 18 U.S.C. § 1344.  *Id.* ¶4.  Ms. Cibrian was arrested on June 23, 2021.  *Id.*  On January 27, 2022, she plead guilty to a one count Information charging her with bank fraud.  *Id.* 2.  Ms. Cibrian was on pre-trial release beginning on June 29, 2021.  *Id.* ¶4.  Despite some positive steps, she struggled with certain conditions of release, including location monitoring and drug testing requirements.  *Id*.  ¶5–13.  Around September 2022, Ms. Cibrian relapsed in her addiction.  *Id.* ¶10.   By March 2022, she had absconded from her bail and a bench warrant was issued.  *Id.* ¶13.  Her whereabouts were unknown until she was arrested on that warrant in September 2023.  *Id.* ¶14.  She has been in custody pending sentencing since that date.  *Id.*

## III.  THE SENTENCING GUIDELINES CALCULATION

The PSR calculates the offense level as follows (PSR ¶¶ 24-32):

    a.    Base Offense Level, U.S.S.G. § 2B1.1:    7

    b.    Specific Offense Characteristics: §B1.1(b)(1)(B) (*loss between $6,500 and $15,000*) +2

    c.    Acceptance of responsibility:    -2

    d.    Total Offense Level:    7

The government agrees with the PSR's calculation of the sentencing guidelines.  The PSR calculates that Ms. Cibrian has 21 criminal history points resulting in criminal history category of VI.  PSR ¶50.  The government also concurs with probation's assessment of Ms. Cibrian's criminal history.  A base offense level of 7 and a criminal history category of VI results in a sentencing guidelines range of 15–21 months in custody.

## IV.  SENTENCING RECOMMENDATION

### A. Legal Standard

The United States Sentencing Guidelines serve as "the starting point and the initial benchmark" of any sentencing process and are to be kept in mind throughout the process.  *See United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008); *see also United States v. Kimbrough*, 522 U.S. 85, 108 (2007).  The overarching goal of sentencing, as set forth by Congress, is for the Court to "impose a sentence sufficient, but not greater than necessary."  *Carty*, 520 F.3d at 991 (citation omitted).  In accomplishing that goal, the Court should consider the factors set forth under 18 U.S.C. § 3553(a), which include:

(1)    the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)    the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(3)    the need for the sentence imposed to afford adequate deterrence to criminal conduct; and

(4)    the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

### B. The Government's Recommended Sentence of Time Served is Sufficient but Not Greater than Necessary

The government recommends that the Court vary downward from the low end of the guidelines and impose a sentence of time served, followed by a 3-year term of supervised release. The government had originally agreed to a resolution in which it would recommend that Ms. Cibrian receive a sentence of probation. The government believed that such a sentence was appropriate in consideration of the relatively low amount of loss as well as Ms. Cibrian's history and characteristics. As noted in the PSR, Ms. Cibrian suffers from significant substance abuse issues and had a very traumatic childhood. While Ms. Cibrian has a long criminal history, it appears that much of her criminal activity was directly related to her substance abuse. Finally, although Ms. Cibrian had struggles while on pre-trial supervision, at the time that the government entered into the plea agreement, it believed that Ms. Cibrian was working earnestly on her sobriety and making important progress. In this context, the government believed that a non-custodial sentence was appropriate under the §3553 factors, and that supervision by probation would allow Ms. Cibrian to continue her recovery.

While Ms. Cibrian's flight from pre-trial supervision must be accounted for in the Court's sentencing decision, the government believes that the approximately four months Ms. Cibrian has spent in jail since her arrest on the bench warrant sufficiently accounts for this behavior. Ms. Cibrian did not contest her detention, and took responsibility for absconding, apologizing to the Court. Notably, like the underlying conduct, Ms. Cibrian's absconding was also directly related to substance abuse issues. It also appears that she was in state custody during a significant portion of her time as a fugitive. *See* PSR ¶47. The government understands that since her plea was entered, Ms. Cibrian has developed health conditions that have provided additional motivation for her to maintain sobriety. The government also understands that at the time Ms. Cibrian was arrested on the federal bench warrant, she was sober and had been for some time. The government accordingly continues to believe that justice is best served if Ms. Cibrian is able to receive further treatment for her substance abuse, mental health, and physical health issues. Because Ms. Cibrian can best continue her recovery on supervised release, the government recommends a sentence of time served followed by a 3-year term of supervised release. However, because of Ms. Cibrian's long criminal history, the government urges the Court to order the following suspicionless search condition:

<u>Special Condition (Searches)</u>
The defendant shall submit his person, residence, office, vehicle, electronic devices and their data (including cell phones, computers, and electronic storage media), and any property under defendant's control to a search. Such a search shall be conducted by a United States Probation Officer or any federal, state, or local law enforcement officer at any time, with or without suspicion. Failure to submit to such a search may be grounds for revocation; the defendant shall warn any residents that the premises may be subject to searches.

## V.   CONCLUSION

For the foregoing reasons, the United States recommends that the Court sentence the defendant to time served, 3 years' supervised release, a $100 special assessment, and restitution in the amount of $9,128.04.

DATED: January 18, 2024                             Respectfully submitted,

                                                    ISMAIL J. RAMSEY
                                                    United States Attorney

                                                    */s/ Evan M. Mateer*
                                                    EVAN M. MATEER
                                                    Assistant United States Attorney